**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KATHY J. WRIGHT, et al.,** | ) | **CASE NO.: 1:25-CV-00057** |
| | ) | District Judge Douglas R. Cole |
| Plaintiffs, | ) | |
| | ) | **PLAINTIFFS' REPLY TO NCUA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF MOTION TO REMAND INTERLOCUTORY APPEAL** |
| vs. | ) | |
| | ) | |
| **JOHN DAVID TERRILL, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs, as their Reply to NCUA's Memorandum in Opposition (Doc. 30) to Plaintiffs' Motion for Reconsideration of the Denial (Doc. 16) of Plaintiffs' Motion for Remand (Doc. 10), submit the following Memorandum.

## I. Introduction and Summary

Plaintiffs' intent is not to re-argue the original merits of the Motion to Remand, as NCUA and the Defendants appear to do. Plaintiff's intent is to raise the import of the two recent cases that appear to be dispositive and in favor of remand, which NCUA and the Defendants do not sufficiently rebut.

The Liquidating Agent's opposition relies on the contention that *Ewalt v. GateHouse Media Ohio Holdings II, Inc.*, 176 F.4th 880 (6th Cir. 2026), does not control this case, because this case involves a "status-based" removal under Title 12 U.S.C. § 1789(a)(2) rather than the Class Action Fairness Act. But *Ewalt's* holding is not limited to, and does not even turn on CAFA's peculiarities at all. *Ewalt* interprets the removal statute itself, Title 28 U.S.C. § 1446(b), and holds that once the 30-day removal clock starts, "later developments" cannot reset it. That principle appears to be general, uniform, and blanket, applying to all removals. No exceptions are provided.

Factually, this record also demonstrates that NCUA, in whatever role or capacity, was more than aware of this litigation, asserted federal regulatory authority, and engaged with the state court long before the January 10, 2025, conservatorship. According to *Ewalt*, those prior triggers are not "reset" by "later developments," including the conservatorship or appointment of a liquidating agent.

If NCUA's arguments stand, any federal agency can monitor a case for years; participate in the case, and direct the party's actions; assert federal authority; block discovery; threaten removal – meaning it knows it can, then; and then remove whenever it wants simply by changing its "capacity." This is what *Ewalt* and *Enbridge* forbid – dragging out which forum hears a case.

## II. Summary of facts and procedural posture

The facts are, NCUA had grounds for removal more than 30 days before it actually removed. See Plaintiffs' Motion to Remand, Doc. 10, PAGEID 288-289, 354 and 393 (NCUA drafted by-laws for BHFCU), 433 (Defendants' Answer), 439-441 (Defendants' Opposition to Motion for TRO, relying heavily on NCUA's directions); 445. Plaintiffs' Complaint, filed in state court on April 16, 2024, alleged that the Defendant BHFCU is a federally chartered credit union subject to the regulatory authority of the National Credit Union Administration. The Complaint asserted claims for breach of fiduciary duty and negligence, and sought declaratory relief enforcing Plaintiffs' rights under the BHFCU Charter, Bylaws, and applicable Code of Federal Regulations and Statutes, and NCUA rules.

As in all these cases, long before the actual Removal, NCUA was also directing BHFCU, asserting federal authority, was already being invoked to block state-court orders, its federal regulations were already central to the dispute, and NCUA's federal powers were asserted.

All that makes it factually impossible for NCUA to claim "We didn't know until January

10, 2025." They knew when the lawsuit was filed. These are the earlier "removal triggers" *Ewalt* says starts the clock, permanently and "conclusively."

So, the only argument NCUA can make, is that the "later developments" are the trigger, and reset the removal clock. *Ewalt* forecloses an argument that treats the conservatorship as a "new trigger," or treats the Liquidating Agent as a "new party," or treats the removal right as "newly created," or treats earlier triggers as irrelevant. *Ewalt* forbids all of this., unless this court is going to create an exception that neither Congress nor the Sixth Circuit provided.

**II. Law and Argument**

**A. Reconsideration of Motion to Remand**

Courts will find justification for reconsidering interlocutory orders when there is an intervening change of controlling law or a need to correct a clear error or prevent manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund,* 89 Fed. Appx. 949, 959 (6th Cir. 2004). *Ewalt*, issued by the Sixth Circuit on May 22, 2026, constitutes precisely such an intervening change in controlling law.

Because removal is the basis for this Court's subject-matter jurisdiction, the jurisdictional question may be raised at any time. A case may be remanded at any time prior to final judgment if it appears the federal court lacks subject-matter jurisdiction. Title 28 U.S.C. § 1447

**B. The Motion to Remand Should be granted because the removal was untimely as the right to removal was not revived by events more than 30-days after original grounds for removal occurred.**

The statute says the clock starts when the removing party *receives* "an amended pleading," or a "motion," or an "order," or any "other paper," from which removability *can be ascertained*. The Statute does not require the removing party to be the author or even the target or respondent to it. So, even though a different person/party filed it, NCUA definitely received it,

being the Complaint, the Motions, and all other papers; and from the start they clearly raised federal issues. That undeniable history demonstrates, and in the context of *Ewalt*, that all Defendants, and NCUA, if they had a removal right, had it before January 10, 2025. All Defendants, and NCUA, had significant involvement before conservatorship. All Defendants, and NCUA, knew all about the case, from the outset.

That is enough to start the clock. And according to *Ewalt*, it never restarts. The removal clock did "start" and long before 30-days prior to when Defendants/NCUA invoked it.

Nonetheless, any development subsequent to any of those triggers - including the state court's discovery order or the conservatorship – does not restart an expired removal clock. *Ewalt* by its terms applies to all removals governed by §1446(b), and provides no exceptions. Nothing in statute or *Ewalt* provides that §1789(a)(2) overrides §1446(b) – is an unstated exception. The Liquidating Agent is not exempt from §1446(b). The conservatorship is merely a "later development." Later developments cannot restart the clock. Because NCUA's removal was untimely under controlling Sixth Circuit precedent, this case must be remanded to state court.

The Liquidating Agent contends that Ewalt "does not supply the intervening change in controlling law that Fed. R. Civ. P. Rule 54(b) reconsideration requires because *Ewalt* does not control the issues in this case."

First, *Ewalt* interprets the very statute at issue here, Title 28 U.S.C. § 1446(b). The Court so held in its June 13, 2025 Opinion, p. 17, stating that " the parties agree that the applicable procedure arises out of § 1446(b)." Because § 1446(b) governs the Liquidating Agent's removal, *Ewalt's* holding governs this case. It just happens to be in the context of a different federal statute for the underlying substantive grounds for removal – but not the *procedure*.

*Ewalt* though holds that, procedurally, and therefore jurisdictionally, its 30-day deadline

is strict, mandatory, and not subject to equitable tolling or resetting by later developments. The Sixth Circuit held that "once commenced, that clock cannot be reset by later developments in a case, including those tied to class certification." *Ewalt*, supra at 884. The Court explained that "[o]nce the default removal clock started ticking, GateHouse had exactly 30 days to remove. And once that time lapsed, the 'forum question ha[d] been put to rest' and was 'conclusive[]' as to the rest of the litigation." Id. at 883 (and citing (citing *Nessel v. Enbridge Energy, LP*, 146 S. Ct. 1074, 1084 (2026)). No room was provided for exceptions or exclusions or conditions. Those principles gain support from the Supreme Court's decision in *Enbridge Energy*, which held that § 1446(b)(1)'s time limitation is not subject to equitable tolling.

Second, *Ewalt* was issued by the Sixth Circuit after this Court's June 13, 2025 Order denying Plaintiffs' Motion to Remand. It addresses precisely the issues raised in Plaintiffs' Motion: resetting a removal clock by later developments.

**C. *Ewalt's* Interpretation of § 1446(b) Applies to All Removals, Not Just CAFA Cases**

The Liquidating Agent attempts to restrict *Ewalt* to CAFA jurisdiction, arguing that its holding is dependent on: (1) CAFA jurisdiction is fixed at the moment the complaint is filed, so nothing that happens afterward can create a new removal trigger for the same party; and (2) the removing defendant had already removed once, successfully, and was attempting a second, untimely removal of its own case.

But *Ewalt's* core holdings concern the interpretation of § 1446(b), not the substantive features of CAFA. There is nothing in *Ewalt* that limits it to class-certification motions or CAFA jurisdiction. The Court's holdings are clear and unequivocal.

*Ewalt* establishes three core principles, each of which govern this case: (1) the removal clock runs once; (2) later events cannot revive or restart an expired deadline; and (3) courts may

not create new removal triggers beyond those expressly authorized by Congress. In *Ewalt*, the defendant timely removed a class action under anther federal statute (the Class Action Fairness Act) within 30 days of the original complaint. 176 F.4th at 883. After the district court denied class certification and remanded the case to state court, plaintiffs filed a second motion for class certification months later. Id. at 884. The defendant removed again, arguing that the second certification motion "reset the removal clock" – just as NCUA does here. Id. at 885.

The Sixth Circuit squarely rejected this argument: "Critically, once commenced, that clock cannot be reset by later developments in a case, including those tied to class certification." Id. at 884. The Court emphasized the mandatory nature of the 30-day deadline: "Once the default removal clock started ticking, GateHouse had exactly 30 days to remove. And once that time lapsed, the 'forum question ha[d] been put to rest' and was 'conclusive[]' as to the rest of the litigation." Id. (quoting *Enbridge Energy*, 146 S. Ct. at 1084).

The Sixth Circuit held that § 1446(b)(3) - which allows removal within 30 days of receiving a paper "from which it may first be ascertained that the case is. removable" - did not apply because the second certification motion "was not the first time [defendant] could have ascertained that the case was removable." Id.

Here, as in *Ewalt*, NCUA seeks to restart an expired removal clock based on subsequent developments. NCUA participated in the state court litigation no later than November 4, 2024, when it filed a Statement of Interest asserting its federal regulatory authority and instructing BHFCU not to produce documents. At least at that point - if not earlier - NCUA had ascertained a basis for removal. The later development of the state court's discovery order cannot create a new removal trigger, according to *Ewalt.*

Nothing in *Ewalt*'s reasoning limits this holding to CAFA cases. The Sixth Circuit

interpreted § 1446(b) as a whole, emphasizing that by that Statute, "Congress devised a comprehensive timeline for removal, and there is no indication that it may be tolled outside the explicit statutory exceptions." Ewalt, supra at 885. The statutory exceptions referenced by the Court—§ 1446(b)(3), which allows a later 30-day window if the initial pleading is not removable, and § 1446(c), which extends the one-year diversity limit in cases of plaintiff bad faith—are not jurisdiction-specific; they also apply to all removals. Title 28 U.S.C. § 1446.

The Court's conclusion that "neither the district court nor this Court has license to craft a new exception where Congress, in its own discretion, has set forth an explicit list by statute" applies with equal force whether the jurisdictional basis is CAFA, § 1789(a)(2), or any other grant of federal jurisdiction – including those advocated by NCUA now.

**D. CAFA's "Fixed-at-Filing" does not override *Ewalt*.**

The Liquidating Agent argues that because *Ewalt* used the example, in that context, that "CAFA jurisdiction is fixed at the moment the complaint is filed," that this distinguishes the case from § 1789(a)(2) removals. But *Ewalt* explicitly held that the 30-day clock under § 1446(b)(1) began when the defendant received the initial complaint, which already contained “solid and unambiguous information that the case was removable”, there under CAFA. *Ewalt*, supra at 884. The Court rejected the argument that any later event—there, the renewed class-certification motion—could trigger a new 30-day window under § 1446(b)(3), because § 1446(b)(3) applies only "if the case stated by the initial pleading is not removable." *Ewalt*, supra at 884. See also Title 28 U.S.C. § 1446.

Here, Plaintiffs' initial Complaint also was removable. It alleged violations of BHFCU's federal charter, federal banking regulations and statutes, and NCUA Rules. The November 4, 2024 Statement of Interest, and the earlier October 2, 2024, letter from NCUA’s Associate

General Counsel, and more, confirmed that NCUA was aware of those federal issues and was asserting regulatory authority over the litigation. Under *Ewalt's* reasoning, the January 10, 2025, conservatorship order is nothing more than a prohibited "later development," that cannot be treated as the first event when removability became ascertainable, in the face of a number of prior events, and because the case was already removable on the face of the Complaint and other events since, and because NCUA had already engaged with the state court. It is undeniable that:

-The case was removable under federal-question jurisdiction from day one;

-The Complaint itself alleged federal charter violations;

-NCUA's Statement of Interest confirmed federal issues pre-existed that Statement;

-NCUA's letters confirmed federal issues;

-NCUA's involvement confirmed federal issues;

-Removal was possible, and "ascertainable," long before conservatorship;

-The event of conservatorship is irrelevant under *Ewalt.*

The fact that § 1789(a)(2) provides a status-based removal right does not change this analysis. Although Section 1789(a)(2) provides that the NCUA Board "may remove" a civil action in which it is a party, it is silent on timing. It does not: 1) create a new removal deadline, 2) restart an expired deadline, 3) override §1446(b), or 4) establish a "capacity based" trigger. Congress knows how to create special removal windows when it intends to. It did not do so here. *Ewalt* says this court can't do that for them.

Section 1446(b)(3) allows a later 30-day window only "if the case stated by the initial pleading is not removable." Title 28 U.S.C. § 1446 Here, the initial pleading was removable. Plaintiffs' Complaint alleged violations of BHFCU's federal charter, federal banking regulations and statutes, and NCUA Rules. In 2023 NCUA had full knowledge of the original Complaint and

the pending litigation, evidenced by the state court's decision to halt the illegal merger that NCUA had erroneously approved. All these/those allegations implicated federal law and federal regulatory authority from the outset.

The removal timing rules are found exclusively in §1446(b). That statute provides a 30-day clock when removability is first ascertainable (§1446(b)(1)), and a second 30-day clock only if the initial pleading was not removable (§1446(b)(3)). Nothing in §1446(b) creates party specific clocks or exceptions for successors, conservators, receivers, or liquidators. Nothing allows ignoring intervening developments or "other papers' to also trigger the removal clock. Removal timing is tied to the case, not the identity or capacity of the removing party.

**E. NCUA's Earlier Knowledge and Involvement Started the Removal Clock**

The record demonstrates that NCUA was aware of this litigation, asserted federal regulatory authority, and engaged with the state court long before the January 10, 2025 conservatorship. See Doc. 11, and Exhibits attached. Under *Ewalt,* the 30-day clock began on any of those events, and certainly no later than November 4, 2024, when NCUA demonstrated its awareness of the litigation and asserted federal regulatory authority. The January 10, 2025, conservatorship order was merely an immaterial and prohibited (for removal triggering purposes) "later development" that cannot reset the clock.

**F. *Ewalt* cannot be Avoided by Characterizing the Conservatorship as a New Trigger**

The Liquidating Agent argues that removal was timely under § 1446(b)(3), which allows a 30-day removal window "if the case stated by the initial pleading is not removable" and the defendant later receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Title 28 U.S.C. § 1446. The Liquidating Agent contends that the conservatorship order was such a paper,

and any prior paper was not. But Section 1446(b)(3) applies only "if the case stated by the initial pleading is not removable." Title 28 U.S.C. § 1446

Here, the initial pleading was removable. See supra. The fact that NCUA had not yet appointed itself, or its Regional Director (named in or the author of some of the cited NCUA correspondence) as Conservator does not mean the case was "not removable"—it means only that NCUA had not yet exercised its removal right. Title 28 U.S.C. § 1446, Title 28 U.S.C. § 1441 In *Ewalt*, the Sixth Circuit held that § 1446(b)(3) did not apply where the original 2019 complaint already supplied the necessary jurisdictional facts, even though the later class-certification motion also implicated CAFA jurisdiction. *Ewalt*, supra at 884. The Court explained that "plaintiffs' [second] class certification motion in state court was not the first time GateHouse *could have ascertained* that the case was removable under CAFA. So § 1446(b)(3) is not applicable." *Ewalt*, supra at 884 (emphasis added).

The same reasoning applies here. The conservatorship order was not the first time NCUA could have ascertained that the case was removable—the Complaint itself alleged federal law violations, and the November 4, 2024 Statement of Interest confirmed that NCUA was aware of those federal issues and was asserting regulatory authority. And there were more in between, and NCUA's own words and papers confirm it, and confirm they knew it.

**G. NCUA is Not a "Separate Entity" for Purposes of § 1446(b)**

The Liquidating Agent argues that it is a "legally distinct entit[y]" from NCUA the regulator, and that the conservatorship triggered a new removal right. But this argument ignores the undisputed fact that the entity that filed the Notice of Removal is the same federal agency—the National Credit Union Administration Board—that filed the Statement of Interest, coordinated with DOJ, and asserted federal regulatory authority months earlier. The fact that

NCUA now acts in a different titled capacity not change its identity or erase its prior engagement with the litigation. A party cannot evade § 1446(b)'s strict timing requirements by asserting different statutory roles at different times.

More importantly maybe, under the Sixth Circuit's long-recognized "stand-in-the-shoes" doctrine, see *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 627 (6th Cir. 2003), a successor-in-interest's (examples being receivers, trustees, etc. – essentially what NCUA is, although in a different title), rights as a party are subject to the same claims and defenses as the original entity from whom they succeeded. See also, *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) ("Like a trustee in bankruptcy or for that matter the plaintiff in a derivative suit, an equity receiver may sue only to redress injuries to the entity in receivership, corresponding to the debtor in bankruptcy and the corporation of which the plaintiffs are shareholders in the derivative suit"). See also, *Javitch*, 315 F.3d at 625 ("Because they stand in the shoes of the entity in receivership, receivers have been found to lack standing to bring suit unless the receivership entity could have brought the same action."). Likewise, NCUA in any derivative capacity is bound only to what BHFCU could have done, in this context at least.

As a practical matter, the record shows the same federal agency filed the Statement of Interest; and directed BHFCU not to produce documents; and coordinated with DOJ in this case; and threatened removal before doing so; and is the one who later removed the case. The "different hats" argument is a fiction. No party should be able to avoid §1446(b) and *Ewalt* by just changing its job title mid-litigation.

Even if the Liquidating Agent were treated as a separate entity for jurisdictional purposes, *Ewalt's* reasoning still applies. *Ewalt* held that "later developments" in a case cannot reset the removal clock, and did not leave open when those later developments relate to the same

jurisdictional basis or not. Here, the Liquidating Agent argues that the conservatorship order triggered its removal right under § 1789(a)(2). But the conservatorship was not the first event implicating § 1789(a)(2) or federal regulatory authority. The Complaint, if not the November 4, 2024 Statement of Interest already asserted NCUA's federal regulatory interests in the litigation.

Neither §1789(a)(2) nor any provision of the Federal Credit Union Act expressly creates a new or independent 30-day removal clock triggered by the Board's appointment as conservator or liquidating agent. The only removal clock is the one Congress enacted in §1446(b), and the Sixth Circuit has now made unmistakably clear in *Ewalt* that once that clock begins, "later developments" — which by the plain and ordinary meaning of "any" – includes changes in party identity, litigation posture, or statutory capacity — cannot reset it. The Supreme Court's decision in *Enbridge* reinforces that §1446(b)'s deadline is "strict" and "not subject to equitable tolling," foreclosing precisely the kind of capacity-based exception NCUA asks this Court to invent. No statute, no regulation, and no case in any Circuit authorizes a "new clock" for a successor in interest federal agency. NCUA's argument is not merely unsupported; it is directly contrary to the controlling law governing removal timing.

Under *Ewalt*, that prior event started the 30-day clock, and the subsequent conservatorship cannot restart it.

**H. *Ewalt* Bars Any Argument That a Removal Clock is Reset by Later Developments**

The Liquidating Agent's argument repeatedly emphasizes that it only removed once. But *Ewalt* does not turn on how many times a party has removed a case. The result would not have been different if the late removal was the only removal. It turns on whether a later development can create a new removal trigger under § 1446(b)(3) when the case was already removable before that. The answer is clearly "no." The undisputed facts show:

(1) Plaintiffs' Complaint alleged violations of BHFCU's federal charter, federal banking regulations and statutes, and NCUA Rules;

(2) On October 2, 2024, NCUA's Associate General Counsel sent a letter asserting federal regulatory authority and instructing Defendants not to disclose NCUA information;

(3) On October 30, 2024, Assistant U.S. Attorney Linda Mindrutiu wrote to counsel on behalf of NCUA, coordinating federal litigation strategy and stating that "NCUA will likely remove to federal court";

(4) On November 4, 2024, NCUA filed a Statement of Interest in state court, asserting federal regulatory authority and instructing BHFCU not to produce documents in discovery;

(5) On January 10, 2025—more than 60 days after the Statement of Interest—the NCUA Board placed BHFCU into conservatorship and appointed itself as Conservator; and

(6) On January 13, 2025—67 days after the Statement of Interest—the Liquidating Agent removed the case to federal court.

That is, NCUA as NCUA, and NCUA's entity as Conservator, and then NCUA's entity as Liquidating Agent – all NCUA, and sometimes the same human being named.

Regardless of the concept that a party can just name itself or something or someone in a new capacity, and according to NCUA here just manipulates the clock to self-create a new trigger, under *Ewalt*, the 30-day clock began as early as the Complaint, and no later than November 4, 2024, when NCUA demonstrated its awareness of the litigation and asserted federal regulatory authority. The January 10, 2025 conservatorship order was a "later development" that cannot reset the clock.

## I. A Timeliness Determination Constitutes a Forbidden Case-Specific Exception

A holding that the conservatorship order triggered a new 30-day window effectively

excused NCUA's failure to remove within 30 days of any one of the numerous prior triggering events. That is the kind of case-specific exception *Ewalt* and *Enbridge* forbid. In *Ewalt,* the district court tolled the 30-day timeline on the ground that the court's "remand [order] introduced ambiguity about CAFA jurisdiction" and, consequently, "GateHouse could not unambiguously ascertain CAFA jurisdiction." *Ewalt*, supra at 885.

The Sixth Circuit reversed, removing any argument for that type of argument creating any judicial exception, holding that "[i]n the removal context, we face a harsh reality: The removal clock is unforgiving and cannot be equitably tolled." Id. at 885. The Court explained that "[a]ny 'equitable, case specific exceptions,' like the one crafted here by the district court, are incompatible with the 'strict, mandatory terms' of § 1446(b)(1)'s 30-day requirement." Id. at 885. The Court further held that "Congress devised a comprehensive timeline for removal, and there is no indication that it may be tolled outside the explicit statutory exceptions." Id. at 885.

Neither Title 28 USCS § 1446, nor *Ewalt*, nor any other statute provides an exception for successor-in-interest removal after the expiration of an earlier deadline. The Court's ruling effectively created such an exception by holding that the conservatorship appointment started a new 30-day clock, even though the case was already removable and the NCUA had already intervened (practically, if not legally). *Ewalt* held that "[n]either the district court nor this Court has license to craft a new exception where Congress, in its own discretion, has set forth an explicit list by statute." Id. at 885. Ruling that conservatorship triggers a new 30-day window is functionally the same as equitable tolling or other exception-creation that *Ewalt* rejected.

NCUA's timeliness argument rests entirely on the premise that the January 10, 2025, conservator appointment, or later as liquidating agent, created a new, independent 30-day removal window. That premise has no foundation in any statute, regulation, or judicial decision,

and in contrary to the plain language in *Ewalt*, and requires this court to create a new exception.

J. **NCUA's Interpretation Would Undermine the Policies Behind the 30-Day Deadline**

The strict 30-day deadline serves important purposes. It ensures that "threshold removal questions" are resolved "early and conclusively," preventing prolonged uncertainty about the proper forum. Id. at 883. It protects plaintiffs' choice of forum and prevents defendants from engaging in strategic delay. In addition, it avoids the inefficiency and confusion that would result from multiple removal attempts based on successive developments in the same case.

NCUA's interpretation would eviscerate these policies. Under NCUA's view, a federal agency could monitor state court litigation for months or years, participate actively by filing statements of interest and asserting federal defenses, and then remove the case whenever a state court issues an order the agency dislikes -- even if the order is not against that Agency. This approach would give federal agencies an indefinite right of removal untethered from the statutory deadline—precisely what *Ewalt* and *Enbridge Energy* prohibit.

K. **FDIC Conservator Cases Do Not Support NCUA**

NCUA relies on older FDIC cases involving receivership. But those cases merely hold that a conservator may remove without formal substitution. They do not hold that a conservator receives a new removal clock. None of those cases •restart the clock, or create a new clock, or override §1446(b). All of them predate *Ewalt* and *Enbridge*.

**L. NCUA's Own Regulations Provide No Support to override or except from *Ewalt*.**

NCUA's reliance on conservatorship as a new trigger is unsupported by statute. Nothing in the Federal Credit Union Act provides any removal timing. It does not create any exception to § 1446(b). The Act has no language that revives, resets, or extends the 30-day removal deadline. NCUA's "Touhy regulations" govern disclosure of nonpublic records. They do not govern

removal timing or create a new removal window. They do not override §1446(b) or *Ewalt.*

## CONCLUSION

There is no statutory, regulatory, or judicial authority that conservatorship or the appointment of the Liquidator creates a new 30-day removal clock. The only removal clock is §1446(b). *Ewalt* and *Enbridge* make clear that §1446(b)'s 30-day removal clock runs once, cannot be reset by later developments, and admits no judicially-created exceptions. Every removal trigger in this case occurred months before the conservatorship, and the conservatorship itself is precisely the kind of prohibited "later development" *Ewalt* forbids. Because the removal clock expired long before January 2025, the Liquidating Agent's removal was untimely as a matter of law. Under §1446(b) and controlling Sixth Circuit precedent, remand is mandatory.

For these reasons, and those previously stated, Plaintiffs respectfully request that the Court grant reconsideration and remand this case to the Butler County Court of Common Pleas.

**THOMAS G. EAGLE CO., L.P.A.**

*/s/ Thomas G. Eagle*

**Thomas G. Eagle** (#0034492)
Counsel for Plaintiffs
3400 N. State Route 741
Lebanon, Ohio 45036
Phone: (937) 743-2545
Fax: (937) 704-9826
E-mail: eaglelawoffice@cs.com

## CERTIFICATE OF SERVICE

A true copy of the foregoing was served via electronic mail only and by use of the court's ECF system to all parties/counsel of record, this 31st day of July 2026.

*/s/ Thomas G. Eagle*
**Thomas G. Eagle** (#0034492)